FILED ___ LODGED
___ RECEIVED ___ COPY

JAN 1 2 2022

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# United States District Court

for the

District of Arizona

Phoenix Division

| | |
|---|---|
| Trevor Reid,<br><br>Crystale Reason<br><br>    *Plaintiffs*<br><br>    -v-<br><br>U.S. Department of the Interior,<br><br>National Park Service,<br><br>Justin P. Doyle, individually and in his official capacity as a National Park Service law enforcement ranger,<br><br>David Ballam, individually and in his official capacity as a National Park Service law enforcement ranger,<br><br>Cynthia Sirk-Fear, individually and in her official capacity as a National Park Service law enforcement ranger,<br><br>and one or more unknown named agents of the United States, called by the fictitious names John Doe or Jane Doe, whose identities are not yet known<br><br>    *Defendants* | Case No. **CV22-00068-PHX-SMB**<br><br>(*to be provided by clerk's office*)<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT

Plaintiffs, Trevor Reid and Crystale Reason, a husband and wife, each proceeding pro se, complain as follows:

## PARTIES

1. The Plaintiff, Trevor Reid, is and always has been a citizen of the United States of America. During the events in Virginia from which Plaintiffs' claims arise Trevor Reid was a resident and citizen of the state of Florida. Trevor Reid is currently a resident and citizen of the state of Arizona.

2. The Plaintiff, Crystale Reason, is and always has been a citizen of the United States of America. During the events in Virginia from which Plaintiffs' claims arise Crystale Reason was a resident and citizen of the state of Florida. Crystale Reason is currently a resident and citizen of the state of Arizona.

3. Trevor Reid and Crystale Reason are, and at all times relevant to this complaint have been, husband and wife.

4. Trevor Reid and Crystale Reason currently reside together in Phoenix, Arizona. Their Mailing address is:

    2606 N 44th St Apt 316

    Phoenix, Arizona  85008

5. Defendant, United States Department of the Interior, is a federal executive department of the United States government, organized and existing under the laws of the United States of America.

6. Defendant, National Park Service, is a federal executive agency of the United States government, organized within the United States Department of the Interior and existing under the laws of the United States of America.

7. Defendants, U.S. Department of the Interior and National Park Service, are situated in the District of Columbia and other offices widely dispersed across the United States, including presence in Arizona as well as in Virginia where the subject events of this action took place.

8. Defendants Justin P. Doyle, David Ballam, and Cynthia Sirk-Fear, at all times relevant to this complaint, were employed by Defendants U.S. Department of the Interior and National Park Service as law enforcement officers of the United States. They are sued in their individual and

official capacities.

9. John Doe(s) and Jane Doe(s), at all times relevant to this complaint, were agents of the United States and are sued in their individual and official capacities.

## JURISDICTION AND VENUE

10. This action seeks redress for Defendants' intentionally and negligently tortious conduct and for deprivation of Plaintiffs' civil rights. It is brought pursuant to the Fourth, Fifth, and Sixth Amendments to the United States Constitution; pursuant to the cause of action recognized in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971); and pursuant to the Federal Tort Claims Act (FTCA). This Court has jurisdiction to decide these federal claims per 28 U.S.C § 1331. Further, this Court has supplemental jurisdiction per 28 U.S.C 1367(a) to decide claims, including state law claims, arising from the same nucleus of operative fact.

11. Venue is proper in this Court per 28 U.S.C. § 1402 and 28 U.S. Code § 1391(e) because:

    a. All Defendants are agencies of the United States, officers of, or employees of the United States who acted in their official capacities, under color of legal authority.

    b. Both Plaintiffs are residents of Phoenix, Arizona.

## FACTS

12. The averments under this heading pertain in general to all Plaintiffs' state and federal claims for relief and are incorporated therein by reference.

### I. Late Night Warrantless Searches and Seizures of Persons At Rented Campsite Abode

13. In 2017 Plaintiffs, Trevor Reid and Crystale Reason, made a trip from their home in Florida to the Washington, DC area to spend time with family. Plaintiffs' dog traveled with them.

14. Experienced campers, Plaintiffs reserved a tent campsite at the Oak Ridge Campground within Prince William Forest Campground near Triangle, Virginia. They paid for their stay in advance. Upon checking in to the campground on August 19th, 2017 Plaintiffs were assigned campsite B19.

15. Plaintiffs found the campsite to be serviceable but shabby in comparison to other federal, state

and private campgrounds they had visited in the past. One relevant aspect of this shabiness was that Plaintiffs had difficulty discerning any marked or paved parking area within the site, as all ground, paved or otherwise, was hard packed and gravel covered.

16. Crystale Reason attempted to park the couples' camping vehicle, a white Ford Explorer, firstly in a manner that did not disturb vegetation or wildlife and secondly that was — as best Plaintiffs could tell — appropriate for parking or where pavement or markings should have been. In any case, the vehicle was parked entirely within the boundary of the rented campsite B19.

17. Plaintiffs set up on campsite B19 including a tent as well as a sleeping and living area in their camping vehicle.

18. In addition to other possessions, Plaintiffs placed a durable, plastic dog crate — purpose built for safe, comfortable travel — inside the tent. Plaintiffs secured their dog in the crate whenever the dog did not accompany them away from site B19.

19. Later the same day Trevor Reid's father, mother and daughter met up with Plaintiffs. The family traveled to the picnic area of Prince William Forest National Park in the truck of Trevor Reid's father. On this occasion the dog stayed behind, secured in the crate within the tent with ample food, water and favorite items.

20. Around 4:00 PM Defendant Justin P. Doyle discussed with a volunteer camp host whether a vehicle was parked off-road, that the host could not find anyone at camp site B19, and that the host had left a note on the windshield of the vehicle parked at site B19.

21. Around 5:30 PM, during Plaintiffs' absence, Defendant Doyle, a federal law enforcement officer, walked to the tent located on the campsite. Defendant Doyle called out "Park Ranger, anyone here," and "hello, anyone home" several times.

22. Defendant Doyle shook the corner of the tent.

23. Defendant Doyle then heard a dog growl from inside the tent.

24. Defendant Doyle did not contact any human occupants of the site during his foregoing entry onto site B19.

25. Plaintiffs returned to site B19 together as it was growing dark and did not notice any note on or around the Ford Explorer.

26. Upon returning, Plaintiffs exercised and cared for their dog, taking a light evening meal at the B19 picnic table. Plaintiffs then re-secured the dog in the crate and tent and retired to sleep in their camping vehicle after dark.

27. At 10:30 PM or later, Defendant Doyle returned to B19 and announced his presence by shouting, knocking on the window of their vehicle and shining a bright flashlight in their eyes.

28. Suddenly awakened from a sound sleep by an aggressive armed man in the dead of night both Plaintiffs became terrified and remained terrified throughout the encounter and until after leaving the park out of fear ahead of their intended schedule the next morning..

29. Defendant Doyle demanded that the vehicle be moved immediately.

30. Plaintiff Crystale Reason, fearing that the armed officer was unreasonably agitated, moved the vehicle to the area Defendant Doyle indicated very early in the encounter and in any case well before a second officer, Defendant Ballam, came to B19 at 10:49 PM.

31. At no time did either Plaintiff consent, verbally or otherwise, to any searches of the premises, of the area previously concealed by the parked truck, of the tent, nor of their person nor to any officer's presence at campsite B19.

32. After the camping vehicle had been moved Plaintiff Reid requested in unequivocal terms that Defendant Doyle leave.

33. Defendant Doyle was using a bright white flashlight, pointing it in various directions including at times directly at the faces of each Plaintiff, at the driver side rear view mirror of the vehicle which reflected painfully into Plaintiff Reid's eyes, as well as at the tent, vehicle and general premises of B19.

34. Plaintiff Reid repeatedly requested that Mr. Doyle not shine the light in their eyes as it was painful since they had been asleep in total darkness and suddenly awakened. When this was mentioned Defendant Doyle suddenly directed the light downward from Plaintiff Reid's face and

asserted that excess light cannot be avoided.

35. Excess light from Doyle's flashlight could have been avoided completely but for Defendant Doyle's presence at B19.

36. At Defendant Doyle's demand for identification Reid expressed a willingness to retrieve an ID document from the vehicle. In response Defendant Doyle asked if there were any weapons in the vehicle. Plaintiff Reid replied, "I'll tell you who I am. And if you want I will fetch an ID from the camper. But I'm certainly not going to talk to you about anything else or answer any more questions without my attorney."

37. Plaintiff Reid verbally provided his name and date of birth to Defendant Doyle. In reply, Doyle replied by exclaiming "is it valid?" Plaintiff Reid could only react to this bizarre non sequitur from an armed man with terrified bewilderment.

38. Defendant Doyle asked again if there were any weapons in the vehicle. Plaintiff Reid replied "I've told you I have nothing to say to you about that."

39. Defendant Doyle ordered both Plaintiffs to sit at the picnic table of site B19. Trevor Reid and Crystale Reason did so.

40. As Plaintiff Reid was moving to the picnic table Defendant Doyle asked "who else is here?" Mr. Reid replied "There are two registered guests here. I think you can see two. I told you I want you to leave and I'll inform you again at this time I'm not…I don't think either of us are interested in answering any more questions until we're in contact with our attorney." In immediate exclamatory reply Defendant Doyle shouted in a voice at least as loud as any he had used up until that point in the encounter "that lawyer stuff is only for people under arrest!"

41. Plaintiff Reid asked if either of them were free to leave. Defendant Doyle indicated the Plaintiffs were not free to leave.

42. Plaintiff Reason asked if she was free to leave. Defendant Doyle indicated that Plaintiff Reason was not free to leave. Defendant Doyle asked Plaintiff Reason who else was there and whether there were weapons in the vehicle. Plaintiff Reason told Doyle she did not want to answer any

questions and asked him to leave. Plaintiff Reason informed Defendant Doyle that she was painfully cold because she was wearing only light sleep wear.

43. Around the time of this encounter winds near Triangle, VA as measured at Ronald Reagan Washington National Airport Station ranged from 7 - 12 miles per hour, gusts of up to 25 miles per hour had occurred and a very light rain had fallen. The temperature at the time was in the low to mid 70's or lower.

44. Defendant Doyle reiterated that he required Plaintiffs to identify themselves but that he would not allow Plaintiff Reason to access the vehicle until Plaintiff Reid told him if any weapons were present.

45. Defendant Ballam, a federal law enforcement officer, came to site B19 at about 10:49 PM.

46. Defendant Doyle performed a frisk for weapons on Plaintiff Reid. During this search Defendant Doyle placed his right hand inside Plaintiff Reid's shirt collar at Reid's left shoulder so that Doyle's bare hand was against Reid's bare shoulder at least three inches inside Reid's clothing.

47. During the pat down search Doyle ordered Reid to "bend at the knees." Plaintiff Reid by no means consented to any part of the search.

48. Defendant Doyle's pat down search did not discover any weapons nor personal effects of any kind on or about Plaintiff Reid's person.

49. Defendant Doyle asked Defendant Ballum to watch Plaintiffs while Defendant Doyle turned his attention to elsewhere.

50. Plaintiff Reid asked if Defendant Ballum could provide Plaintiff Reason a blanket or jacket because she was painfully cold. Defendant Ballum refused.

51. Defendant Doyle conducted a search of the tent. Mr. Doyle knocked on the tent wall and yelled out "Park Ranger anyone there" several times. No one answered his calls. Mr. Doyle lifted up the rain flap on the tent to look inside.

52. Throughout the encounter Mr. Doyles's demeanor toward both Plaintiffs was one of hostility and derision. This hostility increased when Plaintiffs asserted their rights to silence, privacy and counsel.

53. At no time did either Plaintiff Reid or Plaintiff Reason raise their voice to either officer nor resist in any way aside from refusing to answer questions they were not obliged to answer.

54. Before citing Plaintiff Reason for violating 36 C.F.R. 4.12, a petty offense arguably inapplicable under the circumstances, Defendant Doyle instructed Plaintiff Reason to remove her ID from her purse in the vehicle. This instruction was given without either Plaintiff having ever addressed the presence of weapons despite Defendant Doyle's insistence that it was absolutely necessary that his questions regarding weapons in the vehicle be answered (see statement 44 above).

55. This underscores that Defendant Doyle's persistent interrogation of persons in his custody, combined with an hour long seizure of their persons and invasion of their abode, was not a matter of safety but rather a calculated, ego-driven attempt to browbeat his prisoners into waiving their rights — and indeed to retaliate for their having the gall to assert any rights that might break the tempo of his late-night, warrantless parking ticket raid.

## II. Misconduct Complaint

56. On August 31st, 2017 Plaintiff Reid complained by email to the National Park Service, Office of Professional Responsibility (OPR).

57. On September 19th, 2017 Plaintiff Reid was contacted via email by Defendant Cynthia Sirk-Fear, Chief Ranger of Prince William Forest Park, regarding the OPR complaint.

58. On September 25th, 2017 Plaintiff Reid and Defendant Sirk-Fear spoke about the events of August 19th via phone for about 30 minutes. Defendant Reid made and retained contemporaneous notes from the conversation and additional notes immediately afterward.

## III. False Reporting and Records

59. Defendant Doyle submitted materially false, misleading, and/or inaccurate written statements regarding this incident to a record system maintained by Defendants U.S. Department of the

Interior and National Park Service as his General Report and to the U.S. District Court for the Eastern District of Virginia as a complaint.

### IV. Federal Tort Claims Act

60. On August 19th, 2019 each Plaintiff filed a separate claim for damages in the amount of $1 million ($1,000,000) by emailing Standard Form 95 to Defendant Sirk-Fear, the OPR, and to the superintendent of Prince William Forest Park.

61. On August 27th, 2019 OPR attempted to refuse the claim of Defendant Reason contrary to C.F.R. 14.2(b)(1).

62. On August 27th, 2019 the superintendent denied having received the forms on August 19th. Plaintiffs provided additional copies to the superintendent and others at the agency and outlined evidence of having submitted the claims on or before August 19th, 2019. Shortly before noon on August 27th, 2019 the superintendent emailed Plaintiffs indicating both files had indeed been received.

63. The claims were designated Administrative Claim Numbers TBP-19-0731 (for Plaintiff Reid) and TBP-19-0734 (for Plaintiff Reason) dated August 18, 2019.

64. On December 3rd, 2020 Defendant U.S. Department of the Interior denied both claims.

65. On June 1st, 2021 both Plaintiffs filed a request for reconsideration.

66. On July 13, 2021 Defendant U.S. Department of the Interior denied both claims upon reconsideration.

## FEDERAL CLAIMS

67. Pursuant to 28 U.S.C §§ 2671-2680 Defendants U.S. Department of the Interior and National Park Service (U.S. Agency Defendants) are liable for the negligent and, in the case of law enforcement officers, intentional tortious conduct and otherwise wrongful conduct of its government employees to the extent the United States, if a private person, would be liable in accordance with the laws of the state of Virginia where the acts and omissions recited occurred.

68. This tortious and wrongful conduct includes negligence in the hiring, supervision, training and retention of Defendants Doyle, Ballum, Sirk-Fear, and John/Jane Does 1-10 (federal law enforcement officer Defendants or LEOs) and of John/Jane Does 11-20 (federal employees other than LEOs.)

69. Defendants' wrongful conduct also denied Plaintiffs rights guaranteed by the Constitution of the United States, specifically the Fourth, Fifth, and Sixth Amendments.

## VIRGINIA CLAIMS

70. Under Virginia common law tortious conduct by law enforcement Defendants Doyle and Ballum includes conduct that comprise:

    a. Assault

    b. Battery (as to Plaintiff Reid only)

    c. Malicious prosecution (as to Plaintiff Reason only)

    d. Intentional infliction of emotional distress

    e. Negligent and infliction of emotional distress

    f. Libel

    g. Trespass to real property

    h. Trespass to chattels

71. Federal law enforcement Defendants' conduct that is wrongful under Virginia statutes or otherwise includes:

    a. Religious, racial or ethinc harassment per Va. Code Ann. § 8.01-42.1;

    b. Use of insulting words per Va. Code Ann. § 8.01-45;

    c. Breach of contract, constructive eviction and unlawful eviction pursuant to both common law and Va. Code Ann. § 8.01-27 as LEOs actions and omissions denied Plaintiffs quiet enjoyment of an abode rented from their agency employer for which there was a written agreement;

  d. Civil conspiracy;

  e. Fraud;

72. Defendants' wrongful conduct also denied Plaintiffs rights guaranteed by the Constitution of the Commonwealth of Virginia, specifically Va. Const art. I sections 1, 7 through 11, 14, and 17.

## DEMAND FOR RELIEF

73. Plaintiffs respectfully request that this Court enter a judgment including:

  a. Compensatory damages against all Defendants in an amount to be proven at trial;

  b. Punitive damages against all natural person Defendants in an amount to be determined at trial;

  c. Reasonable costs of suit;

  d. Declaratory relief against all Defendants pursuant to 28 U.S. Code § 2201 and as the Court may otherwise deem appropriate;

  e. Injunctive relief against U.S. Agency Defendants enjoining them from:

    i. new or continued violation of Plaintiff's rights;

    ii. Failing or refusing to hire, train, supervise and discipline present or future employees in a manner that reasonably ensures civil rights and civil liberties are not violated;

  f. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

74. Plaintiff Trevor Reid demands a trial by jury as to each and every claim against each and every Defendant.

75. Plaintiff Crystale Reason demands a trial by jury as to each and every claim against each and every Defendant.

SIGNED January 12th, 2022 BY

TREVOR REID

*Plaintiff, Pro Se*

CRYSTALE REASON

*Plaintiff, Pro Se*