# EXHIBIT B

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| National Park Service<br>1849 C Street NW<br>Washington, DC 20240 | Trevor Reid<br><br>Live Oak, FL 32064 |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY  ☒ CIVILIAN | 4. DATE OF BIRTH<br>27 JAN 1976 | 5. MARITAL STATUS<br>MARRIED | 6. DATE AND DAY OF ACCIDENT<br>19 AUG 2017  SATURDAY | 7. TIME (A.M. OR P.M.)<br>22:15 |
|---|---|---|---|---|

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

SEE ATTACHED

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

N/A

10. PERSONAL INJURY/WRONGFUL DEATH

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

SEE ATTACHED

11. WITNESSES

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| CRYSTALE REASON | LIVE OAK, FL 32064 |

12. (See instructions on reverse). AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| 0.00 | 1,000,000.00 | 0.00 | 1,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| *[signature]* | | 18 AUG 2019 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable
95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

REID-DOI-000010

| INSURANCE COVERAGE |
|---|
| In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property. |
| 15. Do you carry accident Insurance? ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.   ☐ No<br>N/A |
| 16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?   ☐ Yes  ☐ No    17. If deductible, state amount.<br>N/A                                                                                                                              N/A |
| 18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).<br>N/A |
| 19. Do you carry public liability and property damage insurance?  ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).   ☐ No<br>N/A |

### INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* **Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

### PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

### PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) **BACK**

REID-DOI-000011

On August 19th, 2017 Justin Doyle, a federal law enforcement officer employed by the National Park Service, entered the premises of a rented campsite at Prince William Forest Park. It was after 10:15 PM, well into the dark of night.  He approached the campers' place of abode armed with a handgun, shouting noisily and brandishing a powerful flashlight.  In so doing he terrified, Trevor Reid and Crystale Reason, the married couple that had been dwelling there peaceably, keeping both in custody for roughly an hour or more.

The ostensible crisis over which this park ranger worked himself into fits of shouting, disturbed a neighborhood of resting campers, created for fellow officer(s) a situation rife with uncertainty , and devoted significant time, effort and funds of the United States was the writing of a *parking ticket* — a questionable parking ticket at that[1].

The Fourth Amendment to the Constitution of the United States provides that searches and seizures must be reasonable. For example, Federal Rule of Criminal Procedure 41(e)(2)(ii) instructs that warrants be executed during the daytime, between the hours of 6 AM and 10 PM, except on a showing of good cause.  Officers who decide to make warrantless searches and seizures have no less of a constitutional duty to adhere to the standards of reasonableness than when executing warrants.

While much of Doyle's subsequent conduct was tortious on its own, it is important to note that all of his actions during that night's encounter are incident to the unlawful search undertaken when he entered a dwelling place at an unreasonable time of night and without any exigent circumstances whatsoever. Likewise, anything he or his agency discovered after that

---

[1] Since the campers were entitled to quiet enjoyment of the rented premises it is not at all clear whether parking of the vehicle *at the campsite* was even governed by the administrative rules that apply to the park's *roads*. To the extent that the rental agreement addressed parking only in marked spaces this would have been a contractual issue and not a matter for law enforcement. Ultimately, Crystale Reason decided not to contest the $100 parking ticket because returning to the Eastern District of Virginia from Florida would have been disproportionately expensive, aggravating and inconvenient. Notably, the Central Violations Bureau process affords no adequate procedure for addressing change of venue nor dealing with matters across districts.

point which might tend to justify his behavior or mitigate its egregiousness would likely be inadmissible for that purpose. It is fruit of a poisoned tree.

See, for example, *Lebel v. Swincicki*,[2] where a Michigan court ruled that unlawfully obtained evidence was inadmissible in a civil claim even for the sake of a party that played no part in the violation of rights. Consider how much more befitting a similar holding would be where, as in this claim, the adverse party is in fact the violator.

That an exclusionary rule for federal civil cases would complement the rule in criminal cases as a deterrent to police misconduct presents a compelling rationale. Indeed, in light of having been terrorized by a federal law enforcement official, this claimant is convinced such a rule is desperately needed to serve the ends of justice. Existing deterrents are clearly inadequate.

We live in a world where an officer tramples constitutional rights over what that officer believes to be, at worst, a parking violation. Any civic-minded, patriotic American with the means to do so must feel compelled to petition for improvement on such a status quo—even if to do so forebodes a long and costly process.

That the park ranger entered the campsite after 10:15 PM is undisputed. This fact is reflected in the officer's own General Report,[3,4] in an account of the incident Trevor Reid sent as a formal complaint to the park headquarters,[5] and in the NCRCC Dispatch Center's log of radio and phone transmissions.[6] The foregoing documents are attached to and incorporated in this claim by reference.

---

[2] 354 Mich. 427, 93 N.W.2d 281, (1958).
[3] Doyle's report recounts the events as having occurred on an impossible date. By the night of August 20th, 2019 Crystale Reason and Trevor Reid had left Prince William Forrest altogether, driven from their rented abode by fear of being further victimized by Justin Doyle and/or his colleagues.
[4] Doyle reported an even later hour than the other documentation..
[5] To prepare this account Trevor Reid relied on his notes taken moments after the officers' departure.
[6] In the log Justin Doyle is identified by the number 212. David Ballam is identified by the number 213.

As further detailed in the attached materials Justin Doyle, in the course of his employment as an agent and law enforcement officer of the United States, committed a number of acts that are tortious under the laws of the United States, the laws of the State of Virginia or both. Moreover, negligent hiring, negligent training, and negligent supervision on the part of the Department of the Interior, the National Park Service, and the Prince William Forest Park headquarters make the United States liable, as a private party would be under similar circumstances, for its agent Doyle's misdeeds:

## BIVENS CLAIMS

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,[7] the Supreme Court held that violations of a person's Fourth Amendment rights by federal officers give rise to a cause of action for damages. Writing thus:

> The Fourth Amendment provides that:
>
> ***"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ...."***
>
> In *Bell v. Hood*, 327 U. S. 678 (1946), we reserved the question whether violation of that command by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct. Today we hold that it does.

1. Trevor Reid and Crystale Reason had rented campsite B-19 of Oak Ridge campground, paying in advance. Campsite B-19 was a defined parcel with demarcated boundaries, not regularly used as a road but as a place of accommodation, whether in a camping motor vehicle or other form of camp shelter.

2. Once in possession of the campsite the pair moved their camping vehicle onto it. The vehicle remained at the campsite, without interruption, to be used as a home away from

---

[7] 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619, (1971).

     home, until the couple decided to decamp. They also erected a tent. Both the vehicle and tent were used for quarters and storage of gear.

3. The couple, residents of Florida, were accustomed to camping on their travels and held a subjective expectation of privacy in their accommodations no less than when staying in a hotel room with a balcony or yard.

4. As such the campsite was a temporary abode, comprising equipment for sleeping and privacy as well as curtilage intimately associated with the activities of daily life and therefore subject to Fourth Amendment protections[8].

5. On the night of August 19, 2017 Justin Doyle conducted unlawful searches:

    a. By entering the curtilage of campsite B-19 in the dark of night after 10:15 PM to conduct a so-called **knock and talk** that could be better be described, generously, as a **hammer and shout**. This law enforcement tactic has been carefully scrutinized lately. It can be reasonable at times of day when uninvited guests might hope to be received. However, it was utterly out of place in this case. Michigan's Court of Appeals, for example, has articulated the sensible view in *People v. Frederick*[9]:

    > Anytime the police initiate a procedure, whether by search warrant or otherwise, the particular circumstances are subject to judicial review to ensure compliance with general constitutional protections. Accordingly, what happens within the context of a 'knock and talk' contact and any resulting search is certainly subject to judicial review. For example, a person's Fourth Amendment right to be free of unreasonable searches and seizures may be implicated where a person, under particular circumstances, does not feel free to leave or where consent to search is coerced.

---

[8] Jason C. Miller, *Do Not Disturb: Fourth Amendment Expectations of Privacy in Hotel Rooms*, 7 Seton Hall Cir. Rev. 269, (Spring, 2011).
[9] 497 Mich. 993, 861 N.W.2d 286, (2015).

    b. By pounding, with his body, flashlight, or other tool, on the window(s) of the camp vehicle occupied by Trevor Reid and Crystale Reason and by shining a bright light inside the occupied vehicle thereby disturbing the couple's night time repose. Doyles actions induced in both campers fright, embarrassment, loss of sleep as well as anxiety that continues to the present day;

    c. By ordering, under color of authority, that the camping vehicle be moved immediately, thereby making it possible to observe areas of the abode that had not been in plain view;

    d. By conducting a pat down search (also called a "frisk") of Trevor Reid while Reid was being unreasonably held in custody, and without any articulable grounds for a reasonable suspicion that Reid might be armed, and where any immediate concerns for the officers' own safety were a consequence of Doyle's own unreasonable presence and prior actions;

    e. By manipulating the tent in such a way that Doyle could look inside the tent even though the interior was usually not visible from the outside.

    f. By, in his role as "contact officer"[10], directing or requesting that a "cover officer"[11], David Ballam, also unreasonably enter the curtilage of the abode after 10:45 PM.

6. Earlier the same day, at our about 5:30 PM Doyle describes in his General Report that he entered campsite B-19. This earlier visit became an unlawful search at the point that Doyle, after having already called out several times and hearing no response that would

---

[10] SAFETAC Publishing, LLC. "Contact & Cover." *Law Officer*, 1 Oct. 2009, https://lawofficer.com/archive/contact-cover/. Accessed 18 Aug. 2019. These roles are common occupational practice among law enforcement officers even where exact terminology may differ by organization. A "contact officer", either the initiator of the procedure or another officer who has assumed command, maintains overall responsibility for investigatory activity while additional "cover officer(s)" provide manpower as needed and "watch the contact officer[s] from a safe distance from which the [cover] officer can see and hear what's happening."
[11] Id.

indicate consent to his continued presence, in his own words "shook the tent." He offers as a pretext that this was to "further announce my presence." Doyle was not entitled to interminably announce his presence by ever expanding means once it was clear that either no one was home or anyone home had no desire to answer. Even if he had been so entitled, shaking a tent is not accepted by society as a way to announce one's presence. Indeed had they been inside the home during the events as described the campers would have feared for their lives. In any case, the manipulation of the tent in such a way as to yield otherwise unobservable information about the contents (in this case the contents included a dog, which reacted to the shaking) is a search. This search was not supported by any articulated suspicion nor by probable cause.

7. On the night of August 19, 2017 Justin Doyle unlawfully held Trevor Reid along with his spouse Crystale Reason in custody, without probable cause, for an unreasonable length of time under the circumstances, and at an unreasonable time of night. Doyle contended during the encounter that the campers were not under arrest. However, a person in police custody is under arrest whenever a reasonable person would not feel free to leave under the circumstances. Trevor Reid asked Doyle directly if he was free to leave. Doyle who was armed with a handgun responded that Reid was "being detained."  More than once Crystale Reason and Trevor Reid requested that both officers leave their home immediately.  The officers, both of whom remained armed during their presence, did not leave, nor release the campers.

8. Early in the encounter Trevor Reid  unequivocally stated that he would like to be released and left alone and that he had nothing further to say and in any case would say nothing more without his attorney present. Many times thereafter Trevor Reid and Crystale Reason for themselves and each on behalf of the other, their spouse, repeatedly

communicated their intention to remain silent and not answer questions. At one point Doyle exclaimed "that lawyer stuff is only for people under arrest!" Doyle continued to ask all manner of questions while he had the campers in custody in violation of the Fourth, Fifth, and Sixth Amendments to the Constitution of the United States[12].

9. Doyle's attitude and treatment of the campers was punitive in nature and reactionary to what Doyle perceived as the camper's being "agitated and angry" with him after his interruption of their night time repose in their abode, even though throughout the entire encounter the only one who ever spoke with even a raised a voice was Doyle. Because Doyle sought to treat the campers more harshly in light of his personal biases, feelings, and frustration at their quiet but firm assertion of rights his behavior taken as a whole was violation of the Eighth Amendment right against cruel and unusual punishments as well as deprivation of liberty without due process of law in contravention of the Fifth Amendment.

## STATE LAW CLAIMS

Pursuant to the common law and statues of the State of Virginia where all these events transpired:

### ASSAULT

10. Doyle committed assault in that
    a. it was reasonably foreseeable that the armed, uninvited and unwelcome presence of Doyle and Ballum at the camper's abode during the night was substantially certain to cause the campers apprehension of an imminent harmful contact;

---

[12] *Ziglar v. Ahmer Iqbal Abbasi*, 137 S. Ct. 615, 196 L. Ed. 2d 492, 2017 U.S. LEXIS 3 (Supreme Court of the United States January 6, 2017, Decided). Although recognition of new causes of action for damages pursuant to *Bivens* is to be undertaken with great care in light of the separation of powers the courts may recognize such causes where there are no "special factors counselling hesitation."

    b. It was reasonably foreseeable that informing Trevor Reid of Doyle's intention to perform a frisk for weapons was substantially certain to cause Reid apprehension of an imminent offensive/harmful contact.

    c. It was reasonably foreseeable that informing Trevor Reid, within earshot of Crystale Reason, of Doyle's intention to perform a frisk for weapons was substantially certain to cause Crystale Reason apprehension of an imminent offensive/harmful contact by a person of the opposite gender.

    d. It was reasonably foreseeable that ordering Trevor Reid to "bend at the knees" during a frisk for weapons was substantially certain to cause Reid apprehension of a further imminent and more offensive/harmful contact than that already underway.

## BATTERY

11. Doyle committed battery in that he intentionally and without reasonable grounds caused a harmful/offensive contact with Trevor Reid by conducting a frisk for weapons, ordering Trevor Reid to "bend at the knees", and in so doing placed his own right hand inside Reid's shirt collar at Reid's left shoulder so that Doyle's bare hand was against Reid's bare shoulder at least 3 inches inside Reid's clothing.

## FALSE ARREST

12. Doyle committed false arrest (or imprisonment) in that, under color of authority, he intentionally restrained the physical liberty of both campers without legal justification.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

13. As an officer of the United States sworn to uphold and defend the Constitution of the United States Doyle's blatant indifference to the rights of citizens shocks the conscience. He seems, on this occasion, to have lacked any sense of proportionality in relation to the

ostensible violation that he was investigating, to lack empathy, judgement or any respect for the notion of privacy, home, or personal space and belongings.

14. As a result of Doyle's conduct the campers experienced weeks of sleep loss, hypervigilance, anxiety, flashbacks and loss of consortium. Both campers' existing issues with depression and anxiety were exacerbated by the stressful, humiliating and terrifying encounter.

15. Trevor Reid, who is a lifetime outdoorsman, experienced depression and a loss of interest in outdoor activities for several weeks.

16. Both campers continue to associate the park with deep psychological pain and expect to be prevented indefinitely by this pain of enjoying the Prince William Forest Park. The campers feel a less intense, but no less real, aversion to any park patrolled by National Park Service rangers.

17. Prior to this incident the campers had enjoyed many state and federal campgrounds and dispersed camping areas. To date neither camper has felt able to return to an NPS campground or forest.

## LIBEL

18. Doyle filed in the Department of Interior's Incident Management Analysis and Reporting System (IMARS) a General Report which contains several falsehoods. As a result of the false statements the reputations and credibility have been harmed and continue to be harmed by the existence of this public record. For example, when Trevor Reid contacted the park headquarters regarding Doyle's conduct the existence of false statements in the IMARS report inevitably had a bearing on the outcome of the supervisor's internal investigation. The falsehoods include:

a. That anything further occurred on the night August 20th, 2017. The entire encounter took place on August 19th, 2017. Because of the terrifying experience the campers made the unhappy decision to decamp within hours, as soon as they were rested enough to travel. Thus the campers were not in Prince William Forest Park at the date and time the Doyle reported.

b. "They stated that they did not know about the note [explaining a parking violation]." Trevor Reid never made such a statement. In fact Reid was unaware of the note until well after the encounter and remains unaware of any conversation whatsoever about the note during the encounter.

c. "[They] did not want to move the vehicle." Neither camper said this. In fact Crystale Reason did move the vehicle early in the encounter, before Ballam arrived.

d. "Both subjects...sounded agitated and angry." At no time did either camper raise their voice or use angry, disrespectful, rude, or abusive language. While the campers did not believe Doyle's presence was lawful, reasonable nor worthy of any special deference the campers complied with his demands, except for there refusal to answer questions they were obligated to answer.

e. "Inside the tent I found a dog inside a small plastic kennel." The kennel was not locked. The dog was free to move in an out and habitually slept on soft blankets inside the kennel. The kennel was a large kennel designed for freight shipping of large and medium dogs.

## TRESPASS

19. Doyle committed, and directed and encourage Ballam to commit, trespass in that he entered upon premises lawfully in the possession of the renters without legal justification,

deprived them of the quiet enjoyment of the premises for an hour or more and made it impossible for them to obtain peace of mind and quiet enjoyment for which they had paid thereafter.

## DAMAGES

Claimant demands compensatory damages of $1,000,000.00 against the United States National Park Service for violations of constitutional rights, its tortious conduct and that of its agents, employees and officers, as an amount corresponding to the proofs that would otherwise be adduced at trial.

REID-DOI-000022