# United States District Court
for the

District of Arizona

Phoenix Division

| | |
|---|---|
| Trevor Reid, | Case No. |
| Crystale Reason | **CV22-00068-PHX-SMB** |
| *Plaintiffs* | |
| -v- | |
| United States of America, | |
| and one or more unknown named agents of the United States, called by the fictitious names John Doe or Jane Doe, whose identities are not yet known | |
| *Defendants* | |

### AMENDED COMPLAINT

Plaintiffs, Trevor Reid and Crystale Reason, a husband and wife, each proceeding pro se, complain as follows:

PARTIES

1. The Plaintiff, Trevor Reid, is and always has been a citizen of the United States of America. During the events in Virginia from which Plaintiffs' claims arise Trevor Reid was a resident and citizen of the state of Florida. Trevor Reid is currently a resident and citizen of the state of Arizona.

2. The Plaintiff, Crystale Reason, is and always has been a citizen of the United States of America. During the events in Virginia from which Plaintiffs' claims arise Crystale Reason was a resident and citizen of the state of Florida. Crystale Reason is currently a resident and citizen of the state of Arizona.

3. Trevor Reid and Crystale Reason are, and at all times relevant to this complaint have been, husband and wife.

4. Trevor Reid and Crystale Reason currently reside together in Phoenix, Arizona.

5. Defendant, the United States of America (United States or USA), previously substituted in to this matter in place of its law enforcement officers Justin Doyle (deceased), David Ballam and Cynthia Sirk-Fear. By this Amended Complaint the United States is sued for the conduct of its officers, of its federal executive agency, the National Park Service, and of its federal executive department the United States Department of the Interior.

7. John Doe(s) and Jane Doe(s), at all times relevant to this complaint, were agents of the United States and are sued in their official capacities.

JURISDICTION AND VENUE

8. This action seeks redress for intentionally and negligently tortious conduct of the Defendant's officers, agencies and department(s) pursuant to the Federal Tort Claims Act (FTCA). This Court has jurisdiction to decide these federal claims per 28 U.S.C § 1331. Further, this Court has supplemental jurisdiction per 28 U.S.C 1367(a) to decide claims, including state law claims, arising from the same nucleus of operative fact.

9. Venue is proper in this Court per 28 U.S.C. § 1402 and 28 U.S. Code § 1391(e) because:

    a. The Defendant is the United States whose agencies, departments, officers, employees, agents and/or volunteers acted in their official capacities and/or under color of legal authority in causing injuries to Plaintiffs as set forth herein.

    b. Both Plaintiffs are residents of Phoenix, Arizona.

## FACTS

10. The averments under this heading pertain in general to all Plaintiffs' state and federal claims for relief and are incorporated therein by reference.

### I. Late Night Unreasonable, Unfounded, and Warrantless Searches and Seizures At Rented Campsite Abode

11. In 2017 Plaintiffs, Trevor Reid and Crystale Reason, made a trip from their home in Florida to the Washington, DC area to spend time with family. Plaintiffs' dog traveled with them.

12. Experienced campers, Plaintiffs reserved a tent campsite at the Oak Ridge Campground within Prince William Forest Campground near Triangle, Virginia. They paid for their stay in advance. Upon checking in to the campground on August 19th, 2017 Plaintiffs were assigned campsite B19.

13. Plaintiffs found the campsite to be serviceable but shabby in comparison to other federal, state and private campgrounds they had visited in the past. One relevant aspect of this shabbiness was that Plaintiffs had difficulty discerning any marked or paved parking area within the site, as all ground, paved or otherwise, was hard packed and gravel covered.

14. Crystale Reason parked the couples' camping vehicle, a white Ford Explorer, firstly in a manner that did not disturb vegetation or wildlife and secondly that was — as best Plaintiffs could tell — appropriate for parking or where pavement or markings should have been. In any case, the vehicle was parked entirely within the boundary of the rented campsite B19.

15. Plaintiffs set up on campsite B19 including a tent as well as a sleeping and living area in their camping vehicle.

16. In addition to other possessions, Plaintiffs placed a durable, plastic dog crate — purpose built for safe, comfortable travel — inside the tent. Consistent with the campground rules, Plaintiffs secured their dog in the crate whenever the dog did not accompany them away from site B19.

17. Later the same day Trevor Reid's father, mother and daughter met up with Plaintiffs. The family traveled to the picnic area of Prince William Forest National Park in the truck of Trevor Reid's father. On this occasion the dog stayed behind, secured in the crate within the tent with ample food, water and favorite items.

18. While visiting the park Plaintiffs and their family had several unpleasant interactions with park rangers including, upon information and belief, Cynthia Sirk-Fear, whom Plaintiffs did not know by name at the time. These interactions made Plaintiffs feel unwelcome at the park although Plaintiffs and their family were complying at all times with the rules. Rangers and others would stand close to the table where the family was picnicking, glaring and muttering. Plaintiffs were not told why they had been singled out, but observed that non-interacial families were not being treated the same way. Plaintiffs and their family at first tried to ignore the unpleasant interactions and enjoy the park. When they were not left alone they decided to visit other regional attractions.

19. On June 30th, 2022 a posed photograph of Cynthia Sirk-Fear was published by the *Washington Post* in an article discussing the death of a man in Shenandoah National Park[1]. A caption published with the photo identified Ms. Sirk-Fear. It is from this photograph that Plaintiffs realized for the first time that Ms. Sirk-Fear was, upon information and belief, one of the officers who had interacted with them at the park during the day.

20. Around 4:00 PM Justin P. Doyle, a national Park Service law enforcement ranger, discussed with a volunteer camp host, Defendant John Doe #1, whether a vehicle was parked off-road, that John Doe #1 could not find anyone at camp site B19, and that John Doe #1 had left a note on the

---

[1] Lizzie Johnson, "He was acting strangely; then he vanished into the Virginia Wilderness". *The Washington Post* (2022), https://www.washingtonpost.com/dc-md-va/interactive/2022/shenandoah-search-missing-teen-ty-sauer/ (last visited Nov 1, 2022).

windshield of the vehicle parked at site B19.

21. Around 5:30 PM, during Plaintiffs' absence, Mr. Doyle, a federal law enforcement officer, walked to the tent located on the campsite. Mr. Doyle called out "Park Ranger, anyone here," and "hello, anyone home" several times.

22. Mr. Doyle shook the corner of the tent.

23. Mr. Doyle then heard a dog growl from inside the tent.

24. Mr. Doyle did not contact any human occupants of the site during his foregoing entry onto site B19.

25. Plaintiffs returned to site B19 together as it was growing dark and did not notice any note on or around the Ford Explorer. On August 19th, 2017 at Triangle, VA sunset occurred by approximately 7:57 PM, and dusk by approximately 8:25 PM.

26. Upon returning, Plaintiffs exercised and cared for their dog, taking a light evening meal at the B19 picnic table. Plaintiffs then re-secured the dog in the crate and tent and retired to sleep in their camping vehicle after dark. By 9:00 PM night had fallen. Local astronomical twilight occurred shortly before 9:30 PM.

27. At 10:30 PM or later — at least an hour and half after nightfall, during the campgrounds prescribed quiet hours and by which time activity at B19 as well as Plaintiffs' campground neighbors had gone dead quiet — Mr. Doyle returned to B19 and announced his presence by shouting, knocking on the window of their vehicle and shining a bright flashlight in their eyes. By this time even the waning crescent moon had set. In other words, by that time the forest canopied environs of campsite B19 were in total darkness — it was pitch black.

28. Suddenly awakened from a sound sleep by an aggressive armed man in the dead of night both Plaintiffs became terrified and remained terrified throughout the encounter. Plaintiffs remained terrified until after leaving the park out of fear. Their departure the next morning was ahead of their intended schedule. Plaintiffs did not stay at the campground for all the days for which they had prepaid.

29. Mr. Doyle demanded that the vehicle be moved immediately.

30. Plaintiff Crystale Reason, fearing that the armed officer, Mr. Doyle, was unreasonably agitated, moved the vehicle to the area Mr. Doyle indicated very early in the encounter and in any case well before a second officer, Mr. Ballam, came to B19 at 10:49 PM.

31. At no time did either Plaintiff consent, verbally or otherwise, to any searches of the premises, of the area previously concealed by the parked truck, of the tent, nor of their person nor to any officer's presence at campsite B19.

32. After the camping vehicle had been moved, Plaintiff Reid requested in unequivocal terms that Mr. Doyle leave.

33. Mr. Doyle was using a bright white flashlight, pointing it in various directions including at times directly at the faces of each Plaintiff, at the driver side rear view mirror of the vehicle which reflected painfully into Plaintiff Reid's eyes, as well as at the tent, vehicle and general premises of B19.

34. Plaintiff Reid repeatedly requested that Mr. Doyle not shine the light in their eyes as it was painful since they had been asleep in total darkness and suddenly awakened. When this was mentioned Mr. Doyle suddenly directed the light downward from Plaintiff Reid's face and asserted that excess light cannot be avoided.

35. Excess light from Mr. Doyle's flashlight could have been avoided completely but for Mr. Doyle's presence at B19.

36. At Mr. Doyle's demand for identification Mr. Reid expressed a willingness to retrieve an ID document from the vehicle. Mr. Doyle then asked if there were any weapons in the vehicle. Plaintiff Reid replied, "I'll tell you who I am. And if you want I will fetch an ID from the camper. But I'm certainly not going to talk to you about anything else or answer any more questions without my attorney."

37. Plaintiff Reid verbally provided his name and date of birth to Mr. Doyle. Mr. Doyle replied by exclaiming "is it valid?" Plaintiff Reid could only react to this bizarre non sequitur from an armed

and screaming man with terrified bewilderment.

38. Mr. Doyle asked again if there were any weapons in the vehicle. Plaintiff Reid replied "I've told you I have nothing to say to you about that."

39. Mr. Doyle ordered both Plaintiffs to sit at the picnic table of site B19. Trevor Reid and Crystale Reason did so.

40. As Plaintiff Reid was moving to the picnic table Mr. Doyle asked "who else is here?" Mr. Reid replied "There are two registered guests here. I think you can see two. I told you I want you to leave and I'll inform you again at this time I'm not…I don't think either of us are interested in answering any more questions until we're in contact with our attorney." In an immediate, exclamatory reply Mr. Doyle shouted in a voice at least as loud as any he had used up until that point in the encounter "that lawyer stuff is only for people under arrest!"

41. Plaintiff Reid asked if either of them were free to leave. Mr. Doyle indicated the Plaintiffs were not free to leave.

42. Plaintiff Reason asked if she was free to leave. Mr. Doyle indicated that Plaintiff Reason was not free to leave. Mr. Doyle asked Plaintiff Reason who else was there and whether there were weapons in the vehicle. Plaintiff Reason told Doyle she did not want to answer any questions and asked him to leave. Plaintiff Reason informed Mr. Doyle that she was painfully cold because she was wearing only light sleep wear.

43. Around the time of this encounter winds near Triangle, VA as measured at Ronald Reagan Washington National Airport Station ranged from 7 - 12 miles per hour, gusts of up to 25 miles per hour had occurred and a very light rain had fallen. The temperature at the time was in the low to mid 70's or lower.

44. Mr. Doyle reiterated that he required Plaintiffs to show identification documents but that he would not allow Plaintiff Reason to access the vehicle until Plaintiff Reid told him if any weapons were present.

45. David Ballam, a federal law enforcement officer, came to site B19 at about 10:49 PM.

46. Mr. Doyle performed a frisk for weapons on Plaintiff Reid. During this search Mr. Doyle placed his right hand inside Plaintiff Reid's shirt collar at Reid's left shoulder so that Doyle's bare hand was against Reid's bare shoulder at least three inches inside Reid's clothing. Mr. Doyle's training record indicates a history of conducting search(es) without gloves despite policies and/or practices on which he had been trained.

47. During the pat down search Doyle ordered Reid to "bend at the knees." Plaintiff Reid by no means consented to any part of the search.

48. Mr. Doyle's pat down search did not discover any weapons nor personal effects of any kind on or about Plaintiff Reid's person.

49. Mr. Doyle asked Mr. Ballum to watch Plaintiffs while Mr. Doyle turned his attention elsewhere.

50. Plaintiff Reid asked if Mr. Ballum could provide Plaintiff Reason a blanket or jacket because she was painfully cold. Mr. Ballum refused.

51. Mr. Doyle conducted a search of the tent. Mr. Doyle knocked on the tent wall and yelled out "Park Ranger anyone there" several times. No one answered his calls. Mr. Doyle lifted up the rain flap on the tent to look inside.

52. Throughout the encounter Mr. Doyles's demeanor toward both Plaintiffs was one of hostility and derision. This hostility increased when Plaintiffs asserted their rights to silence, privacy and counsel.

53. At no time did either Plaintiff Reid or Plaintiff Reason raise their voice to either officer nor resist in any way aside from refusing to answer questions they were not obliged to answer.

54. Before citing Plaintiff Reason for violating 36 C.F.R. 4.12, a petty offense inapplicable under the circumstances, Mr. Doyle instructed Plaintiff Reason to remove her ID from her purse in the vehicle. This instruction was given without either Plaintiff having ever addressed the presence of weapons despite Mr. Doyle's loud insistence that it was absolutely necessary that his questions regarding weapons in the vehicle and his imagined presence of other persons be answered.

55. This underscores that Mr. Doyle's persistent interrogation of persons in his custody, combined with an hour long seizure of their persons and invasion of their abode, was not a matter of safety but rather a calculated, ego-driven attempt to browbeat his prisoners into waiving their rights — and indeed to retaliate for their having the gall to assert any rights that might break the tempo of his late-night, warrantless parking ticket raid.

56. At no time during the encounter did Mr. Doyle, nor Mr. Ballam, articulate any grounds for suspicion, reasonable or otherwise, beyond the alleged petty parking offense.

**II. Misconduct Complaint**

57. On August 31st, 2017 Plaintiff Reid complained by email to the National Park Service, Office of Professional Responsibility (OPR).

58. On September 19th, 2017 Plaintiff Reid was contacted via email by Cynthia Sirk-Fear, a federal law enforcement officer and Chief Ranger of Prince William Forest Park, regarding the OPR complaint.

59. On September 25th, 2017 Plaintiff Reid and Ms. Sirk-Fear spoke about the events of August 19th via phone for about 30 minutes. Plaintiff Reid made and retained contemporaneous notes from the conversation and additional notes immediately afterward.

### III. False Reporting and Records

60. Mr. Doyle submitted materially false, misleading, and/or inaccurate written statements regarding this incident to a record system maintained by the U.S. Department of the Interior and National Park Service as his General Report and to the U.S. District Court for the Eastern District of Virginia as a complaint.

### IV. Federal Tort Claims Act

61. On August 19th, 2019 each Plaintiff filed a separate claim for damages in the amount of $1 million ($1,000,000) by emailing Standard Form 95 to Cynthia Sirk-Fear, the OPR, and to Tanya Gosset, the superintendent of Prince William Forest Park.

62. On August 27th, 2019 OPR and John Doe #2 attempted to refuse the claim of Plaintiff Reason contrary to C.F.R. 14.2(b)(1).

63. On August 27th, 2019 the superintendent, Ms. Gosset, denied having received the forms on August 19th. Plaintiffs provided additional copies to the superintendent and others at the agency and outlined evidence of having submitted the claims on or before August 19th, 2019. Shortly before noon on August 27th, 2019 the superintendent emailed Plaintiffs indicating both files had indeed been received.

64. The claims were designated Administrative Claim Numbers TBP-19-0731 (for Plaintiff Reid) and TBP-19-0734 (for Plaintiff Reason) dated August 18, 2019.

65. On December 3rd, 2020 the U.S. Department of the Interior denied both claims.

66. On June 1st, 2021 both Plaintiffs filed a request for reconsideration.

67. On July 13, 2021 the U.S. Department of the Interior denied both claims upon reconsideration.

### FEDERAL CLAIMS

68. Pursuant to 28 U.S.C §§ 2671-2680 the United States is liable for the negligent and, in the case of law enforcement officers, intentional tortious conduct and otherwise wrongful conduct of its government employees to the extent the United States, if a private person, would be liable in

accordance with the laws of the state of Virginia where the acts and omissions recited occurred.

69. This tortious and wrongful conduct includes negligence in the hiring, supervision, training and retention of park rangers Doyle, Ballum, Sirk-Fear, Tanya Gosset, John Doe#1, John Doe#2, and

70. The harm done by Defendant's agent's wrongful conduct included but was not limited to deprivation of Plaintiffs rights guaranteed by the Constitution of the United States, specifically the First, Fourth, Fifth, Sixth, and Eighth Amendments. Further, Plaintiffs were harmed by the denial of rights guaranteed by the Constitution of the Commonwealth of Virginia, specifically Va. Const art. I sections 1, 7 through 11, 14, and 17.

VIRGINIA CLAIMS

71. Under Virginia common law tortious conduct by law enforcement agents Doyle and Ballum includes conduct that comprise:

    a. Assault

    b. Battery (as to Plaintiff Reid only)

    c. Malicious prosecution (as to Plaintiff Reason only)

    d. Intentional infliction of emotional distress

    e. Negligent infliction of emotional distress

    f. Libel (by ranger Doyle only)

    g. Trespass to real property

    h. Trespass to chattels

72. Federal law enforcement officers' conduct that is wrongful under Virginia statutes or otherwise includes:

    a. Religious, racial or ethnic harassment per Va. Code Ann. § 8.01-42.1;

    b. Use of insulting words per Va. Code Ann. § 8.01-45;

    c. Breach of contract, constructive eviction and unlawful eviction pursuant to both common law and Va. Code Ann. § 8.01-27 as the ranger's and agents actions and omissions denied

      Plaintiffs quiet enjoyment of an abode rented from their agency employer for which there was a written agreement;

    d. Civil conspiracy;

    e. Fraud;

## DEMAND FOR RELIEF

73. Plaintiffs respectfully request that this Court enter a judgment including:

    a. Compensatory damages against all Defendants in an amount to be proven at trial;

    b. Reasonable costs of suit;

    c. Declaratory relief against all Defendants pursuant to 28 U.S. Code § 2201 and as the Court may otherwise deem appropriate;

    d. Such other relief as the Court deems just and proper.

SIGNED, AS AMENDED November 1, 2022 BY

/s/ TREVOR REID

*Plaintiff, Pro Se*

/s/ CRYSTALE REASON

*Plaintiff, Pro Se*

## **CERTIFICATE OF SERVICE**

I certify that on November 1st, 2022 that a copy of the foregoing document has been provided via CM/ECF or by mail to the following:

Noel C. Capps
Assistant U.S. Attorney Arizona
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4449

Attorney for Defendants United States of America, David Ballam, and Cynthia Sirk-Fear

Justin P. Doyle
4118 S 220 W
Vernal, UT  84078

                                                s/Crystale Reason