Trevor Reid
Crystale Reason
3920 E Thomas Rd  #5723
Phoenix, AZ  85010
Email: trevor.d.reid@gmail.com
Email: crystale.reid@gmail.com
Tel: (386) 249-9739
Plaintiff(s), pro se

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Trevor Reid, | Case No. **CV-22-00068-PHX-SMB** |
|---|---|
| Crystale Reason | |
| Plaintiffs | |
| v. | |
| United States of America, et al | PLAINTIFFS' STATEMENT OF FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT |
| Defendants | |

1. Trevor Reid, is and always has been a citizen of the United States of America. (Doc 28, Amended Complaint (AC) ¶ 1).

2. During the events in Virginia from which these claims arise Trevor Reid was a resident and citizen of the state of Florida. (AC ¶ 1).

3. Trevor Reid is currently a resident and citizen of the state of Arizona. (AC ¶ 1).

4. Crystale Reason, is and always has been a citizen of the United States

of America.  (AC ¶ 2).

5. During the events in Virginia from which the Reids' claims arose Crystale Reason was a resident and citizen of the state of Florida. (AC ¶ 2).

6. Crystale Reason is currently a resident and citizen of the state of Arizona. (AC ¶ 2).

7. Trevor Reid and Crystale Reason (collectively the Reids) are, and at all times relevant, have been, husband and wife. (AC ¶ 3).

8. Trevor Reid and Crystale Reason currently reside together in Phoenix, Arizona. (AC ¶ 4).

9. John Doe #1 and John Doe #2, at all times relevant, were agents of the United States.  (AC ¶ 7).

10.  In 2017 the Reids made a trip from their home in Florida to the Washington, DC area to spend time with family. (AC ¶ 11).

11. The Reids' dog traveled with them. (AC ¶ 11).

12. Trevor Reid and Crystale Reason are experienced campers. (AC ¶ 12).

13. The Reids reserved a tent campsite at the Oak Ridge Campground within Prince William Forest Campground near Triangle, Virginia. (AC ¶ 12).

14. The Reids paid for their stay in advance. (AC ¶ 12).

15. Upon checking in to the campground on August 19th, 2017 the Reids were assigned campsite B19. (AC ¶ 12).

16. Campsite B19 was serviceable but shabby in comparison to other federal, state and private campgrounds the experienced campers had visited. (AC ¶¶12, 13).

17. The Reids had difficulty discerning any marked or paved area within the site. (AC ¶ 13).

18. All ground at the site, paved or otherwise, was hard packed and gravel covered. (AC ¶ 13).

19. The couple's camping vehicle was a white Ford Explorer. (AC ¶ 14).

20. Crystale Reason parked the couples' camping vehicle, a white Ford Explorer, in a manner that did not disturb vegetation or wildlife. (AC ¶ 14).

21. Crystale Reason parked the couples' camping vehicle in a manner appropriate for parking or where markings should have been. (AC ¶ 14).

22. Crystale Reason parked the camping vehicle in an appropriate place and manner as best as the Reid's could tell. (AC ¶ 14).

23. The camping vehicle was parked entirely within the boundary of the rented campsite B19. (AC ¶ 14).

24. The Reids set up on campsite B19 including a tent as well as a sleeping and living area in their camping vehicle. (AC ¶ 15).

25. The Reids placed a durable, plastic dog crate — purpose built for safe, comfortable travel — inside the tent. (AC ¶ 16).

26. The Reids placed other possessions inside the tent. (AC ¶ 16).

27. The Reids secured their dog in the crate whenever the dog did not accompany them away from site B19. (AC ¶ 16).

28. Campground rules called for securing pets indoors when campers were away. (AC ¶ 16).

29. Trevor Reid's father, mother and daughter met up with the Reids during the day of August 19th, 2022. (AC ¶ 17).

30. The family traveled to the picnic area of Prince William Forest National Park in the truck of Trevor Reid's father. (AC ¶ 17).

31. While the family was away the dog stayed at site B19, secured in the crate within the tent with ample food, water and favorite items. (AC ¶ 17).

32. While visiting the park the Reids and their family had several unpleasant interactions with park rangers. (AC ¶ 18).

33. These interactions made the Reids feel unwelcome at the park. (AC ¶ 18).

34. The Reid's and their family were complying at all times with the rules. (AC ¶ 18).

35. Rangers and others would stand close to the table where the family was picnicking. The rangers glared and muttered. (AC ¶ 18).

36. The Reids were singled out by the rangers for different treatment (AC ¶ 18).

37. The Reids were not told why they had been singled out. (AC ¶ 18).

38. Non-interracial families were not being treated the same way. (AC ¶ 18).

39. Rangers with whom the family interacted included Cynthia Sirk-Fear. (AC ¶¶ 18, 19).

40. The Reid's did not know Cynthia Sirk-Fear by name during their visit to the park.  (AC ¶¶ 18, 19).

41. The Reid's did not know Cynthia Sirk-Fear was one of the rangers who had made them feel unwelcome at the park when Trevor Reid communicated by phone and email with Cynthia Sirk-Fear. (AC ¶¶ 18, 19, 58, 59).

42. The Reids and their family tried to ignore the unpleasant interactions

and enjoy the park. (AC ¶ 18).

43. When the Reids were not left alone they decided to visit other regional attractions. (AC ¶ 18).

44. The Reids were intimidated out of enjoying the picnic area of Prince William Forest National Park by park rangers, under the supervision of Cynthia Sirk-Fear, who treated them differently than non-interracial families. (sup. ¶¶ 32-39, 42, 43; inf. ¶ 115).

45. The Reids recognized Cythia Sirk-Fear as one of the officers that had made them feel unwelcome during the day from a news article and photograph in 2022. (AC ¶ 19).

46. Justin P. Doyle (Doyle, Mr. Doyle) was a federal law enforcement officer. (AC ¶ 20).

47. Around 4:00 PM on August 19th, 2022 Doyle discussed with a volunteer camp host, John Doe #1, whether a vehicle was parked off-road, that John Doe #1 could not find anyone at camp site B19, and that John Doe #1 had left a note on the windshield of the vehicle parked at site B19. (AC ¶ 20).

48. Around 5:30 PM, during the Reids' absence Doyle walked to the tent located on the campsite. (AC ¶ 21).

49. During the 5:30 PM visit Mr. Doyle called out "Park Ranger, anyone

here," and "hello, anyone home" several times. (AC ¶ 21).

50. Mr. Doyle shook the corner of the tent. (AC ¶ 22).

51. Mr. Doyle then heard a dog growl from inside the tent. (AC ¶ 23).

52. Mr. Doyle did not contact any human occupants of the site during his evening entry onto site B19 at around 5:30 PM. (AC ¶ 24).

53. The Reids returned to site B19 together as it was growing dark. (AC ¶ 25).

54. The Reids did not notice any note on or around the Ford Explorer. (AC ¶ 25).

55. On August 19th, 2017 at Triangle, VA sunset occurred by approximately 7:57 PM, and dusk by approximately 8:25 PM. (AC ¶ 25).

56. Upon returning, the Reids exercised and cared for their dog, taking a light evening meal at the B19 picnic table. The Reids then re-secured the dog in the crate and tent and retired to sleep in their camping vehicle after dark. (AC ¶ 26).

57. By 9:00 PM night had fallen. Local astronomical twilight occurred shortly before 9:30 PM. (AC ¶ 26).

58. At 10:30 PM or later Mr. Doyle returned to B19 and announced his presence by shouting, knocking on the window of their vehicle and

shining a bright flashlight in their eyes.  (AC ¶ 27).

59. Mr. Doyle's return occurred at least an hour and half after nightfall. (AC ¶ 27).

60. Doyle's return occurred during the campground's prescribed quiet hours.  (AC ¶ 27).

61. By the time Doyle returned activity at B19 as well as the Reid's campground neighbors had gone dead quiet. (AC ¶ 27).

62. Mr. Doyle's return occurred when the night was pitch black. (AC ¶ 27).

63. The Reid's were suddenly awakened from a sound sleep by Doyle (AC ¶ 28).

64. Doyle was aggressive and armed.  (AC ¶ 28).

65. Trevor Reid became terrified and remained terrified throughout the encounter.  (AC ¶ 28).

66. Crystale Reason  became terrified and remained terrified throughout the encounter.  (AC ¶ 28).

67. Trevor Reid and Crystale Reason both remained terrified until after they left the park out of fear.  (AC ¶ 28).

68. Their departure the next morning was ahead of the Reids' intended schedule. (AC ¶ 28).

69. The Reids did not stay at the campground for all the days for which they had prepaid. (AC ¶ 28).

70. Mr. Doyle demanded that the vehicle be moved immediately. (AC ¶ 29).

71. Crystale Reason, fearing that the armed officer, Mr. Doyle, was unreasonably agitated moved the vehicle to the area Mr. Doyle indicated.  (AC ¶ 30).

72. Crystale Reason moved the vehicle to the area Mr. Doyle indicated very early in the encounter.  (AC ¶ 30).

73. Crystale Reason moved the vehicle to the area Mr. Doyle indicated before a second officer, Mr. Ballam, came to B19 at 10:49 PM. (AC ¶ 30).

74. At no time did Trevor Reid consent, verbally or otherwise, to any searches of the premises, of the area previously concealed by the parked truck, of the tent, nor to his person nor to any officer's presence at campsite B19.  (AC ¶ 31).

75. At no time did Crystale Reason consent, verbally or otherwise, to any searches of the premises, of the area previously concealed by the parked truck, of the tent, nor of their person nor to any officer's presence at campsite B19.  (AC ¶ 31).

76. After the camping vehicle had been moved, Mr. Reid requested in unequivocal terms that Mr. Doyle leave. (AC ¶ 32).

77. Mr. Doyle was using a bright white flashlight, pointing it in various directions including at times directly at the faces of Trevor Reid and Crystale Reason. (AC ¶ 33).

78. Mr. Doyle was using a bright white flashlight, pointing it in various directions including at times at the driver side rear view mirror of the vehicle which reflected painfully into Trevor Reid's eyes. (AC ¶ 33).

79. Doyle pointed his flashlight at the tent, vehicle and general premises of B19. (AC ¶ 33).

80. Trevor Reid repeatedly requested that Mr. Doyle not shine the light in their eyes (AC ¶ 34).

81. The light shined in Trevor Reid's eyes and Crystale Reason's eyes was painful because they had been asleep in total darkness and suddenly awakened. (AC ¶ 34).

82. When the pain was mentioned Mr. Doyle suddenly directed the light downward from Mr. Reid's face and asserted that excess light cannot be avoided. (AC ¶ 34).

83. Excess light from Mr. Doyle's flashlight could have been avoided completely but for Mr. Doyle's presence at B19. (AC ¶ 35).

84. At Mr. Doyle's demand for identification Mr. Reid expressed a willingness to retrieve an ID document from the vehicle. Mr. Doyle then asked if there were any weapons in the vehicle. Mr. Reid replied, "I'll tell you who I am. And if you want I will fetch an ID from the camper. But I'm certainly not going to talk to you about anything else or answer any more questions without my attorney." (AC ¶ 36).

85. Trevor Reid verbally provided his name and date of birth to Mr. Doyle. Mr. Doyle replied by exclaiming "is it valid?" (AC ¶ 37).

86. ""Is it valid?" is a bizarre question for a law enforcement officer to ask about a name and/or birthday under the circumstances. (AC ¶ 37).

87. Mr. Reid reacted to this bizarre non sequitur from an armed and screaming man with terrified bewilderment. (AC ¶ 37).

88. Mr. Doyle asked again if there were any weapons in the vehicle. Mr. Reid replied "I've told you I have nothing to say to you about that." (AC ¶ 38).

89. Mr. Doyle ordered both to sit at the picnic table of site B19. Trevor Reid and Crystale Reason did so. (AC ¶ 39).

90. As Mr. Reid was moving to the picnic table Mr. Doyle asked "who else is here?" Mr. Reid replied "There are two registered guests here. I think you can see two. I told you I want you to leave and I'll inform

you again at this time I'm not…I don't think either of us are interested in answering any more questions until we're in contact with our attorney."  (AC ¶ 40)

91. In an immediate, exclamatory reply Mr. Doyle shouted in a voice at least as loud as any he had used up until that point in the encounter "that lawyer stuff is only for people under arrest!"  (AC ¶ 40).

92. Mr. Reid asked if either of them were free to leave. Mr. Doyle indicated the Reids were not free to leave.  (AC ¶ 41).

93. Crystale Reason asked if she was free to leave. Mr. Doyle indicated that Crystale Reason was not free to leave. Mr. Doyle asked Crystale Reason who else was there and whether there were weapons in the vehicle. Crystale Reason told Doyle she did not want to answer any questions and asked him to leave. Crystale Reason informed Mr. Doyle that she was painfully cold because she was wearing only light sleep wear.  (AC ¶ 42).

94. Around the time of this encounter winds near Triangle, VA as measured at Ronald Reagan Washington National Airport Station ranged from 7 - 12 miles per hour, gusts of up to 25 miles per hour had occurred and a very light rain had fallen. The temperature at the time was in the low to mid 70's or lower.  (AC ¶ 43).

95. Mr. Doyle reiterated that he required the Reids to show identification documents but that he would not allow Crystale Reason to access the vehicle until Mr. Reid told him if any weapons were present. (AC ¶ 44).

96. David Ballam, a federal law enforcement officer, came to site B19 at about 10:49 PM. (AC ¶ 45).

97. Mr. Doyle performed a frisk for weapons on Mr. Reid. During this search Mr. Doyle placed his right hand inside Mr. Reid's shirt collar at Reid's left shoulder so that Doyle's bare hand was against Reid's bare shoulder at least three inches inside Reid's clothing. (AC ¶ 46)

98. Mr. Doyle's training record indicates a history of conducting search(es) without gloves despite policies and/or practices on which he had been trained. (AC ¶ 46).

99. During the pat down search Doyle ordered Reid to "bend at the knees." Mr. Reid by no means consented to any part of the search. (AC ¶ 47).

100. Mr. Doyle's pat down search did not discover any weapons nor personal effects of any kind on or about Mr. Reid's person. (AC ¶ 48).

101. Mr. Doyle asked Mr. Ballum to watch the Reids while Mr. Doyle turned his attention elsewhere. (AC ¶ 49).

102. Mr. Reid asked if Mr. Ballum could provide Crystale Reason a blanket or jacket because she was painfully cold. Mr. Ballum refused. (AC ¶ 50).

103. Mr. Doyle conducted a search of the tent. Mr. Doyle knocked on the tent wall and yelled out "Park Ranger anyone there" several times. No one answered his calls. Mr. Doyle lifted up the rain flap on the tent to look inside. (AC ¶ 51).

104. Throughout the encounter Mr. Doyles's demeanor toward both the Reids was one of hostility and derision. This hostility increased when the Reids asserted their rights to silence, privacy and counsel. (AC ¶ 52).

105. At no time did either Mr. Reid or Crystale Reason raise their voice to either officer nor resist in any way aside from refusing to answer questions they were not obliged to answer. (AC ¶ 53).

106. Before citing Crystale Reason for violating 36 C.F.R. 4.12, Mr. Doyle instructed Crystale Reason to remove her ID from her purse in the vehicle. This instruction was given without either of the Reids having ever addressed the presence of weapons despite Mr. Doyle's loud insistence that it was absolutely necessary that his questions regarding weapons in the vehicle and his imagined presence of other

persons be answered. (AC ¶ 54).

107. Violating 36 C.F.R.4.12 is a petty offense. (AC ¶ 54).

108. A citation for violating 36 C.F.R.4.12 was inapplicable under the circumstances. (AC ¶ 54).

109. Mr. Doyle's persistent interrogation of persons in his custody, combined with an hour long seizure of their persons and invasion of their abode, was not a matter of safety. (AC ¶ 55)

110. Mr. Doyle's persistent interrogation of persons in his custody, combined with an hour long seizure of their persons and invasion of their abode, was a calculated, ego-driven attempt to browbeat his prisoners into waiving their rights. (AC ¶ 55).

111. Mr. Doyle's persistent interrogation of persons in his custody, combined with an hour long seizure of their persons and invasion of their abode, was to retaliate for their having the gall to assert any rights that might break the tempo of his late-night, warrantless parking ticket raid. (AC ¶ 55).

112. At no time during the encounter did Mr. Doyle, nor Mr. Ballam, articulate any grounds for suspicion, reasonable or otherwise, beyond the alleged petty parking offense. (AC ¶ 56).

113. On August 31st, 2017 Mr. Reid complained by email to the

National Park Service, Office of Professional Responsibility (OPR). (AC ¶ 57).

114. On September 19th, 2017 Mr. Reid was contacted via email by Cynthia Sirk-Fear, a federal law enforcement officer and Chief Ranger of Prince William Forest Park, regarding the OPR complaint. (AC ¶ 58).

115. Cynthia Sirk-Fear was a supervisor of Justin Doyle, David Ballam and the rangers that made the Reid's feel unwelcome at the picnic area. (sup. ¶ 102).

116. On September 25th, 2017 Mr. Reid and Ms. Sirk-Fear spoke about the events of August 19th via phone for about 30 minutes. Mr. Reid made and retained contemporaneous notes from the conversation and additional notes immediately afterward. (AC ¶ 59).

117. Mr. Doyle submitted false, misleading, and/or inaccurate written statements regarding this incident to a record system maintained by the U.S. Department of the Interior and National Park Service as his General Report. (AC ¶ 60).

118. Mr. Doyle submitted false, misleading, and/or inaccurate written statements regarding this incident to the U.S. District Court for the Eastern District of Virginia as a complaint. (AC ¶ 60).

119. On August 19th, 2019 each of the Reids filed a separate claim for damages in the amount of $1 million ($1,000,000) by emailing Standard Form 95 to Cynthia Sirk-Fear, the OPR, and to Tanya Gosset, the superintendent of Prince William Forest Park. (AC ¶ 61).

120. On August 27th, 2019 OPR and John Doe #2 attempted to refuse the claim of the Reids Reason contrary to C.F.R. 14.2(b)(1). (AC ¶ 62).

121. On August 27th, 2019 the superintendent, Ms. Gosset, denied having received the forms on August 19th. The Reids provided additional copies to the superintendent and others at the agency and outlined evidence of having submitted the claims on or before August 19th, 2019. Shortly before noon on August 27th, 2019 the superintendent emailed the Reids indicating both files had indeed been received. (AC ¶ 63).

122. The claims were designated Administrative Claim Numbers TBP-19-0731 (for Mr. Reid) and TBP-19-0734 (for Crystale Reason) dated August 18, 2019. (AC ¶ 64).

123. On December 3rd, 2020 the U.S. Department of the Interior denied both claims. (AC ¶ 65).

124. On June 1st, 2021 both the Reids filed a request for

reconsideration. (AC ¶ 66).

125.  On July 13, 2021 the U.S. Department of the Interior denied both claims upon reconsideration. (AC ¶ 67).

Respectfully submitted this 7th day of February, 2023.

s/ Trevor Reid, *plaintiff pro se*

s/ Crystale Reason, *plaintiff pro se*

## CERTIFICATE OF SERVICE

I certify that on February 7th, 2023 the foregoing document was provided via CM/ECF or mail to:

Noel C. Capps
Assistant U.S. Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4449

Attorney for Defendant the United States of America

s/Crystale Reason